UNITED STATES, Appellee,

v.

Byron G. POWELL, First Lieutenant,
U.S. Marine Corps, Appellant.

No. 63,974.
NMCM 88 2384.

U.S. Court of Military Appeals.

Argued Nov. 27, 1990.
Decided Feb. 26, 1991.

For Appellant: *Captain Dwight H. Sullivan,* USMCR (argued).

For Appellee: *Lieutenant Commander Lawrence W. Muschamp,* JAGC, USN (argued); *Commander Thomas W. Osborne,* JAGC, USN (on brief).

*Opinion of the Court*

SULLIVAN, Chief Judge:

Appellant, a Marine officer, was tried by a military judge sitting alone as a general court-martial at Camp Pendleton, California, in 1987. Contrary to his pleas, he was found guilty of 4 of 11 specifications of dereliction of duty, in violation of Article 92, Uniform Code of Military Justice, 10 USC § 892. He was sentenced to dismissal, and the convening authority approved this sentence. On December 22, 1989, the Court of Military Review affirmed the findings of guilty and the sentence in a short-form opinion.

This Court granted the following issue for review:

WHETHER THE MILITARY JUDGE ERRED TO APPELLANT'S SUBSTANTIAL PREJUDICE BY FAILING TO HOLD THAT INEPTITUDE PROVIDED A DEFENSE TO A DERELICTION CHARGE WHERE AN ACCUSED OF LIMITED ABILITIES, OPERATING WITH MINIMAL COMMAND SUP-

PORT, FAILS TO PROPERLY MANAGE A MARINE CORPS DIVISION'S COMMUNICATION MATERIAL SYSTEM.

We find no legal error in the judge's partial rejection of the defense of ineptitude in this case and affirm. *See generally United States v. Williams*, 21 MJ 360 (CMA 1986).

The particular offenses of which appellant was found guilty were contained in specifications alleging that appellant, "who knew of his duties, as the Communication Material System [CMS] Custodian for Communication Material System Account 369147, at Camp Pendleton, California":

SPECIFICATION 1:

... during the months of October and November 1986, *was derelict in the performance of those duties in that he willfully allowed Gunnery Sergeant C. L. Droy, U.S. Marine Corps, to falsely sign Communication Material System 2–1A, 2–3, and 2–4 Destruction Reports as a witness to the destruction of classified materials*, and thereby willfully failed to ensure that the said reports were properly and accurately prepared, as it was his duty to do.

SPECIFICATION 2:

... during the months of October and November 1986, *was derelict in the performance of those duties, in that he willfully completed and signed Communication Material System Destruction Reports prior to the actual destruction of classified materials contained in said reports*, and thereby willfully failed to comply with authorized procedures for the destruction of classified materials and the preparation of Communication Material System Destruction Reports, as it was his duty to do.

SPECIFICATION 3:

... on or about 4 September 1986, *was derelict in the performance of those duties in that he by culpable inefficiency failed to sign the September 1986, Communication Material System 2–3 and 2–4 Destruction Reports for the said account*, as it was his duty to do.

SPECIFICATION 5:

... from about 1 September 1986 to 26 November 1986, *was derelict in the performance of those duties in that he by culpable inefficiency failed to keep the Running Inventory File for the said account up to date at all times*, as it was his duty to do.

(Unclassified.) (Emphasis added.)

After the military judge found appellant guilty of these offenses, he made certain comments on his findings for the record, as follows:

Prior to launching into the pre-sentencing hearing, it occurred to me during the recess that it might not be inappropriate for me to just make a few comments about the findings for the benefit of subsequent reviewing authorities and counsel for both sides.

It is, I trust, apparent by my findings that I was convinced beyond a reasonable doubt of all of the elements of all of the offenses of which I found the accused guilty. As accurately pointed out in the argument, a person is derelict in the performance of his duties when he performs them or fails to perform them in a culpably inefficient manner; and that is defined as inefficiency for which there is no reasonable or just excuse.

With respect to the offenses of which I found the accused not guilty, and this was not meant to be an all inclusive list, in addition to perhaps some other elements, I was, in each instance, not convinced beyond a reasonable doubt that the accused was derelict by culpable inefficiency, specifically, *I was, among other things, not convinced beyond a reasonable doubt that the accused did not have a reasonable or just excuse.*

*A factor in my fact finding that caused to—a reasonable doubt to remain was this business with the command.* It appears, to me, as if, listening to the testimony here, that the problems by and large have been corrected; but there were some elements that were factored into my deliberations, to include but not limited to, I recognize that this

collateral duty apparently was not all that burdensome, but the fact of the matter is somebody in the command was on notice in April of 1986, and the context of what you would call, a marginal if not unsatisfactory report—inspection report that the accused had a collateral duty. And it seems to be indicative of the command attitude. And again, the issue—the command is not on trial. The issue here is reasonable or just excuse and I'm not criticizing the command. I'm speaking because I'm going to talk about my other findings of which the accused was found guilty in a moment. Seems like, to me, that that failure to even note and take corrective action on what was arguably an unsatisfactory report and relieve him of his illegal collateral duties in April is *indicative of what would appear something less than the command attention and supervision that should have been devoted. And that—and that's not all inclusive but those are among the reasons why a reasonable doubt remained with respect to the specifications of which I found the accused not guilty.*

Now, with respect to Specification 3, where I found the accused guilty by culpable inefficiency. Nothing complicated about that. As a fact finder I believed Sergeant Mack when he said he prepared those documents for the accused's signature and put them on the accused's desk and reminded the accused that they needed to be signed. I'm convinced beyond a reasonable doubt with respect to that specification, in addition to the other elements, that the accused was culpably inefficient and that he did not have a reasonable or there was no reasonable or just excuse for this inefficiency. There's nothing difficult about that; but I find that the report was prepared by Sergeant Mack as he said that it was, it was presented to the accused and the accused was reminded and that's different from the other specs.

And with respect to Specification 5. First of all the date change. I just sort of opted for 1 September, I know that in June of '86, the running inventory was in fine shape. There's not a single discrepancy listed on that June inspection report in 1986 with respect to the running inventory. Sometime between June and December, the running inventory collapsed. I opted for 1 September, that's on or about the date Sergeant Mack transferred.

In find—I'm convinced beyond a reasonable doubt of culpable inefficiency here, because from listening to the testimony and reviewing Prosecution Exhibit 38, there were serious, serious, serious problems, it seems to me, in that running inventory. So, that's what distinguishes Specification 5 from the other issues. It seems to me—I think it was Lieutenant Tiedge who testified that for all intents and purposes there was no running inventory and that's about accurate, at least from—in the August and September time frame.

The 26 November date, with reference to the final date, I do find that Lieutenant Tiedge was assigned as the communications—the CMS custodian on 26 November 1986, so I excepted out 1 December because I did not feel that he had—the accused had any duties as a man—material custodian on the 1st of December, 1986.

So, I proffer that to counsel for both sides as an explanation, and to subsequent reviewing authorities. If I veered in my reasoning, subsequent reviewing authorities can certainly—it should be clear to them, now, what I was thinking of and they can tell me where I have erred, if indeed I have.

Okay. Any comments from either side on the comments that I have made? I'm not asking for argument, just comments.

TC: No, Your Honor.

CC: No, sir.

MJ: Let's look, gentlemen, please, at the personal data as contained on page 1 of the charge sheet. Are there any additions or corrections or objections to that date as reflected?

TC: I don't believe so, sir; but I confess somewhere in this stack of papers, in one of these piles is the original charge sheet and I'm not working on the original. I don't believe there are any additions.

MJ: Okay. Let me just make one other comment with respect to the findings since it was mentioned by the defense in the argument. The circumstantial evidence with respect to Specifications 1 and 2 convinces me beyond reasonable doubt specifically of the element of willfulness.

So, that was mentioned in the argument and I wanted to make that clear, and of course, I'm also convinced beyond a reasonable doubt of the other elements of those offenses but I wanted to address willfulness specifically.

(Unclassified.) (Emphasis added.)

---

■■■ Article 92(3) of the Uniform Code of Military Justice provides that "[a]ny person subject to this chapter who ... is derelict in the performance of his duties; shall be punished as a court-martial may direct." Paragraph 16c(3)(c), Part IV, Manual for Courts-Martial, United States, 1984, explains this offense as it is generally recognized in military law. *See United States v. Dellarosa*, 30 MJ 255 (CMA 1990). That paragraph states:

(c) *Derelict.* A person is derelict in the performance of duties when that person willfully or negligently fails to perform that person's duties or when that person performs them in a culpably inefficient manner. "Willfully" means intentionally. It refers to the doing of an act knowingly and purposely, specifically intending the natural and probable consequences of the act. "Negligently" means an act or omission of a person who is under a duty to use due care which exhibits a lack of that degree of care which a reasonably prudent person would have exercised under the same or similar circumstances. "Culpable inefficiency" is inefficiency for which there is no reasonable or just excuse.

This same Manual, in paragraph 16c(3)(d), also delineates the defense of ineptitude which we have acknowledged as existing with respect to this offense. *See United States v. Kelchner*, 16 USCMA 27, 29, 36 CMR 183, 185 (1966). That paragraph states:

(d) *Ineptitude.* A person is not derelict in the performance of duties if the failure to perform those duties is *caused by ineptitude* rather than by willfulness, negligence, or culpable inefficiency, and may not be charged under this article, or otherwise punished. For example, a recruit who has tried earnestly during rifle training and throughout record firing is not derelict in the performance of duties if the recruit fails to qualify with the weapon.

(Emphasis added.)

Paragraph 171c, Manual for Courts-Martial, United States, 1951, an earlier version of this explanation, provided additional examples of situations where the ineptitude defense would apply. It stated:

*Discussion.*—A duty may be imposed by regulation, lawful order, or custom of the service. A person is derelict in the performance of his duties when he willfully or negligently fails to perform them, or when he performs them in a culpably inefficient manner. When the failure is with full knowledge of the duty and an intention not to perform it, the omission is willful. When the nonperformance is the result of a lack of ordinary care, the omission is negligent. Culpable inefficiency is inefficiency for which there is no reasonable or just cause. *Thus, if it appears that the accused had the ability* and opportunity to perform his duties efficiently, but performed them inefficiently nevertheless, he may be found guilty of this offense. *However, an accused may not be charged under this article, or punished otherwise, if his failure in the performance of his duties is caused by ineptitude* rather than by willfulness, negligence, or culpable inefficiency. For ex-

ample, a recruit who has earnestly applied himself during rifle training and throughout record firing may not be punished because he fails to qualify with the weapon; *nor may a sergeant who, however inefficient, has made an honest effort to maintain direction, be punished for becoming lost with his squad on a maneuver; nor may an artillery battery commander who has zealously applied himself to the instruction of his battery in firing be punished because his battery fails to achieve a satisfactory score in a firing test.*

(Emphasis added.) *Accord* para. 171*c*, Manual for Courts–Martial, United States, 1969 (Revised edition).

In view of the above, ineptitude as a defense is largely fact-specific, requiring consideration of the duty imposed, the abilities and training of the soldier upon whom the duty is imposed, and the circumstances in which he is called upon to perform this duty. The factfinder must determine whether this defense exists in a particular case. *See United States v. Williams, supra* at 362. *See generally Patterson v. New York,* 432 U.S. 197, 202–03, 97 S.Ct. 2319, 2322–24, 53 L.Ed.2d 281 (1977). Our responsibility under Article 67(c), UCMJ, 10 USC § 867(c) (1989), is to determine whether there was some evidence of record for a rational factfinder to find beyond a reasonable doubt that this defense did not exist. *See United States v. Dellarosa* and *United States v. Williams,* both *supra. See generally United States v. Hart,* 25 MJ 143, 146 (CMA 1987), *cert. denied,* 488 U.S. 830, 109 S.Ct. 85, 102 L.Ed.2d 61 (1988).

■ We may now turn to appellant's argument in this case. He claims that the military judge erred by failing to accept this defense for the four specifications for which he was found guilty. He asserts that the evidence of record "clearly established" his lack of skill and training in performing his CMS duties and the command's lack of support for him in this

function. We find his argument on this issue incomplete, and therefore we reject it.

Initially, we note that the military judge found appellant not guilty of seven dereliction-of-duty specifications. His comments in the record indicate that he reached these findings for one of the reasons proffered by appellant on appeal, *i.e.,* a failure of appropriate command support. Accordingly, it cannot be said that the military judge rejected the defense of ineptitude as a matter of law. *Cf. United States v. Flannigan,* 31 MJ 240 (CMA 1990); *United States v. Byrd,* 24 MJ 286, 291–92 (CMA 1987).

We further note that the particular duties alleged in the specifications were shown at trial not to require great skill, ability, or assistance. *See United States v. Grow,* 3 USCMA 77, 11 CMR 77 (1953). The three deficient-report offenses entailed appellant's permitting a nonwitness to sign as a witness; his signing such reports prior to destruction of the documents referred to therein; and his failing to sign some of these reports at all. Evidence showed that these duty failures were caused by a lack of simple integrity rather than ineptitude. An officer's word is his bond; and, in the circumstances of this case, there was no excuse for an officer knowingly signing false reports or allowing the same to be signed by others. The fourth specification, as noted by the judge in his comments, involved a complete failure to keep a required inventory. Since the nature of the derelicted duties is a proper matter for consideration by the factfinder, rejection of the defense of ineptitude on the basis of the record before us was not legal error. *See generally United States v. Hart, supra.*

The decision of the United States Navy–Marine Corps Court of Military Review is affirmed.

Judge COX and Senior Judge EVERETT concur.